**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TOURO UNIVERSITY<br><br>                 Plaintiffs,<br><br>          -against-<br><br>EDWARD F. FARKAS<br><br>                 Defendant. | Case No.:<br><br>**COMPLAINT** |

Plaintiff Touro University ("Touro"), by and through its undersigned attorneys, as for its Complaint against Defendant Dr. Edward F. Farkas ("Farkas"), hereby alleges as follows:

## NATURE OF THE CLAIMS

1.      Touro brings this action to prevent further disclosure of its trade secrets and confidential information, to protect its trade secrets and confidential information, and to prevent irreparable injury.

2.      Touro College of Dental Medicine at New York Medical College ("TCDM") is a division of Touro.

3.      Since TCDM's inception, Farkas has been an integral part of the Senior Administration, has held numerous titles during his Touro employment, and was most recently the TCDM Vice Dean.

4.      On or about December 6, 2023, Farkas advised Touro President, Dr. Alan Kadish, that he (Farkas) was resigning from his position as Vice Dean effective January 1, 2024 to join Touro's competitor in the higher education space, in order to assist that entity in developing a dental school.

5.      As Vice Dean of  TCDM, and as a founding member of Touro College of Dental Medicine, Farkas was in a key position with access to Touro's confidential information and trade secrets.

6.     Touro's Information Technology Department conducted an analysis of Farkas's Touro-issued devices and learned that Farkas downloaded 4,962 Touro files between Friday, December 1, 2023 and Monday, December 4, 2023, many of which were confidential documents, contained confidential information, or are trade secrets.

7.     Touro has also determined that Farkas routinely conducted Touro business, including discussion of and, upon information and belief, use of Touro's confidential information and trade secrets, using Farkas's personal Gmail accounts (rather than his Touro email account).

8.     Farkas's blatant and unabated disregard for the law and his fiduciary duties, have caused and are continuing to cause irreparable harm to Touro such that immediate injunctive relief is necessary and warranted.

## JURISDICTION AND VENUE

9.     This Court has original subject matter jurisdiction over this action because it is brought under the Defend Trade Secrets Act of 2016. *See* 18 U.S. Code § 1836(c). ("The district courts of the United States shall have original jurisdiction of civil actions brought under this section.").

10.     This Court also has jurisdiction over the remaining claims because in any civil action of which the district court has original jurisdiction, the district court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Touro is subject to the Court's personal jurisdiction.

## PARTIES

12.     Touro University is a 501(c)(3) not-for-profit education corporation chartered by the New York State Board of Regents.

13.     TCDM is a division of the Touro University System and is accredited by the Commission on Dental Accreditation (CODA).

14.     TCDM is located on the New York Medical College campus in Hawthorne, Westchester County, New York.

15.     Farkas is a natural person who, upon information and belief, resides at 11 Keewaydin Road, Lawrence NY 11559.

## FACTUAL ALLEGATIONS

16.     Touro University (at the time, Touro College) and Farkas began discussions in 2015 regarding the feasibility of a new Touro dental school.

17.     After some discussions, the plan to establish a dental school on the campus of NYMC was internally approved.

18.     Touro undertook great time and effort to create a dental school.

19.     TCDM was created using Touro's scalable, repeatable and sustainable method and formula for opening institutions of higher education in a uniquely efficient manner.

20.     Farkas played a key role in the creation and development of TCDM.

21.     Once TCDM was created, Farkas assumed the role of Vice Dean under the Founding Dean Goldsmith.

22.     After attaining regulatory approvals and accreditation from New York State and initial accreditation status from CODA, the first class of the new dental school enrolled in July 2016.

23.     TCDM is the first dental school in the nation run under Jewish auspices.

24.     TCDM is a leading teaching and institutional innovator fully committed to the principles of diversity.

25.     TCDM is sponsored by Touro and carries full accreditation without reporting requirements of CODA.

26.     TCDM's primary educational offering is an educational program leading to the D.D.S. degree.

27.     Since enrolling its first class in July 2016, TCDM has graduated over 440 students who have gone on to some of the most sought-after residency and specialty programs throughout the country, matching to these programs at a significantly higher rate than the national average.

28.     TCDM's students have exceeded expectations in first-time national board pass rates and currently the class of 2024 has a 100% success rate.

29.     TCDM recently also exceeded the first-time pass rate on the clinical licensing examination in all areas.

30.     Through use of its digital clinical infrastructure, TCDM provides its students with the platform of success for their professional career as the technology for oral health care changes.

31.     Indeed, Touro has developed, as demonstrated by the establishment of TCDM, a scalable, repeatable and sustainable method and formula for opening institutions of higher education in a uniquely efficient manner, particularly in the area of health sciences; Farkas was made aware of this method and formula by virtue of his role in developing TCDM.

32.     In his role as Vice Dean, Farkas was responsible for many facets of the administration of the dental school including but not limited to information technology, design and implementation in coordination with the IT Department of Touro.

33.     Due to his senior role at TCDM, Farkas had access and control over nonpublic files that were not otherwise available and that were specifically protected from people in other subordinate roles, including Touro's Confidential Information and Trade Secrets.

34.     Farkas was privy to Confidential Information and Trade Secrets, including nonpublic information including the processes to develop and implement a dental school and corresponding regulatory and accreditation processes, course curricula and materials, donor lists, and the information needed to develop future programs.

35.     This process to develop and implement a dental school is formulated from Touro's scalable, repeatable and sustainable plans to open higher education institutions in the healthcare field in a uniquely efficient manner.

36.     TCDM's Confidential Information and/or Trade Secrets include construction projects planned and completed, including architectural plans and renderings that were created, approved and utilized. This includes the Clinical Facility, Pre-Clinical Simulation Laboratory, Examination Center, Konikoff Education Center, Orthodontic Clinical Facility, the Student Lounge, and Faculty Offices.

37.     TCDM's Confidential Information and/or Trade Secrets also include Development Agreements, including one with the ProHealth DSO.

38.     TCDM's Confidential Information and/or Trade Secrets also include documents and information related to its accreditation. This includes documents and processes for initial application in 2015, documents and processes for the mid-cycle site visit in April, 2018, documents and processes for a final site visit in April, 2020 (which was postponed), documents and processes for a virtual site visit in April, 2021, production and submission of documents for acceptance of Advanced Standing Students in December, 2021, production and submission of documents for increased enrollment, initial submission in May, 2022, and supplemental information provided in November, 2022.

39.     TCDM's Confidential Information and/or Trade Secrets also include production and submission of application for Orthodontics and Dentofacial Orthopedics, which was submitted in January, 2022, supplemental information submitted in August, 2022, and a New York State submission in January, 2023.

40.     TCDM's Confidential Information and/or Trade Secrets also include all site visit arrangements, calendars, mock visits, and schedules associated with any of the above documents and processes.

41.     TCDM's Confidential Information and/or Trade Secrets also include specific curricula development.

42.     TCDM's Confidential Information and/or Trade Secrets also include certain syllabi that have been created, and various teaching modalities that have been used.

43.     TCDM's Confidential Information and/or Trade Secrets also include videos, OSCE examinations that have been created, and all program examinations including formative and summative competency assessments.

44.     TCDM's Confidential Information and/or Trade Secrets also include affiliation agreements with St. Joseph's Hospital Center, Montefiore Medical Center, New York Presbyterian Queens, St. Barnabas, Westchester Medical Center, Ossining Open Door, and Anderson Center for Autism.

45.     TCDM's Confidential Information and/or Trade Secrets also include global integration chairside of digital workflows and data capture.

46.     TCDM's Confidential Information and/or Trade Secrets also include its clinical policies, procedures and manuals.

47.     TCDM's Confidential Information and/or Trade Secrets also include its Infection Prevention Manual.

48.     TCDM's Confidential Information and/or Trade Secrets also include its Standing Committee Structure, including the Curriculum Committee, the Student Academic Performance and Review Committees, the Faculty Forum, the Executive Committee of the Faculty Forum, the Admissions Committee, and the Appointment and Promotions Committee.

49.     TCDM's Confidential Information and/or Trade Secrets also include Committees of Appointment, including the Infection Prevention Committee and its monitoring processes, inspection logs, and manifests for regulated waste disposal.

50.     TCDM's Confidential Information and/or Trade Secrets also include information regarding its Instrument and Materials Committee, including the evaluation processes and material formulary.

51.     TCDM's Confidential Information and/or Trade Secrets also include information about the Outcomes Assessment Committee, including information such as grids for education, clinical care, research and community service goals and outcomes.

52.     TCDM's Confidential Information and/or Trade Secrets also include information about the Quality Assurance Committee, including standards of care and measures.

53.     TCDM's Confidential Information and/or Trade Secrets also include information about its Academic Integrity Committee.

54.     TCDM's Confidential Information and/or Trade Secrets also include information about its Continuing Education Committee.

55.     TCDM's Confidential Information and/or Trade Secrets also include information about Key Performance Indicators developed.

56.     TCDM's Confidential Information and/or Trade Secrets also include its financial statements, budgets and credit card statements.

57.     TCDM's Confidential Information and/or Trade Secrets also include documents and information related to Touro's Operations.

58.     TCDM's Confidential Information and/or Trade Secrets also include its Student Handbook, Course Catalog, Faculty Handbook Addendum to the Touro College Faculty Handbook, and its Environmental and Safety Manual.

59.     TCDM's Confidential Information and/or Trade Secrets also include information about its Business Office policies and procedures.

60.     TCDM's Confidential Information and/or Trade Secrets also include information about and documents from Touro Dental Health (TCDM's clinic).

61.     Touro has invested time, resources, and talent to develop a model that allows it to build programs, refine those programs, and then replicate those programs – including the creation of a dental school.

62.     Touro takes great care to protect its Confidential Information (including information and documents) and Trade Secrets.

63.     Touro protects its Confidential Information and Trade Secrets by password protecting its computers, network and other databases, the use of two factor authentication, a digital workspace solution that delivers secure access to applications, restricting access to certain databases to those that require the Confidential Information and Trade Secrets stored therein, providing employees with University-owned emails, restricting access to its facilities and key file cabinets, requiring that employees return all Confidential Information and Trade Secrets upon termination of employment, requiring confidentiality from employees, and regularly training employees.

64.     Upon information and belief, in 2022 and 2023 (if not earlier), Farkas began seeking other opportunities either at existing dental schools or dental schools in development.

65.     Upon information and belief, in the fall of 2023, Farkas approached a competitor regarding its desire to develop and start a dental school.

66.     Furthermore, notwithstanding his duties of loyalty, care and to act in good faith with respect to Touro, upon information and belief, Farkas began consulting with one or more competitors in the higher education space, whilst still employed by Touro.

67.     Upon information and belief, on or about July, 2023, if not earlier, Farkas began downloading Touro's trade secrets, confidential information, and intellectual property (collectively "Protected Information") from his Touro Box account[1] to a personal device, as well as a Touro-owned device in his personal possession.

68.     Touro's Information Technology Department conducted an analysis of Farkas's Touro-issued computer account and emails, and learned that Farkas downloaded 4,962 Touro files between December 1, 2023 and December 4, 2023.

69.     Thousands of the downloaded files contain Touro's Protected Information.

70.     The files Farkas downloaded, include, among others:

a)     List of Faculty Development Programs.pdf
b)     Risk Assessment Instrument from the EMR.pdf
c)     Research Grants.pdf
d)     SGA Bylaws.pdf
e)     ███████████ Hospital Agreement.pdf[2]
f)      TCDM Summative Examinations vs 12 CODA Standards Grid.pdf
g)     TCDM Competencies vs. 12 CODA Standards.pdf
h)     Touro College Strategic Plan.pdf
i)      CODA Steering Committee  Agenda 5-15-19.docx
j)      1.2.3 TCDM Assessment Calendar July 2019-June 2020.pdf
k)     1.8.1 Touro College Middle States Accreditation Status.pdf
l)      2.4.3 Curriculum Map.pdf
m)    Exhibit 7 - Alumni Survey for PG Ortho draft (1).docx
n)     Exhibit 77 - Syllabus Research Methods and Biostatistics.docx
o)     Exhibit 1 - Outcomes Assessment PG Ortho Goals, Outcomes (Appendix B).docx

---

[1] A Touro Box account is a secure, password protected area of cloud storage that is owned and maintained by Touro.  Access to a Touro Box account requires the employee's unique username and password and is protected by two-factor authentication.

[2] Note: Client name (medical provider) redacted for confidentiality

p)    Exhibit 33 - Minutes TCDM Advanced Education in Orthodontics and Dentofacial Orthopedics faculty meeting 20211215.docx

q)    Exhibit 6 - Orthodontic Case Completion Form Template for Electronic Health Record.docx

r)    Exhibit 57 - Emergency Cart Inspection Log template.png

s)    Exhibit 75 - Curriculum Map PG Orthodontics and Dentofacial Orthopedics.xlsx

t)    Steering Committee - CODA 2020 and 2021

u)    TCDM Discounts

v)    ██████@touro.edu - ████████████'s Files and Folders[3]

w)    TCDM NM Hiring Plan_05.01.2022 (1).xlsx

x)    TCDM NM Hiring Plan_05.01.2022.xlsx

y)    building14A_roof.dgn

z)    Citi Business Statement June 2021.pdf

aa)   Guidelines for increased enrollment.pdf

bb)   Citi Business Statement May 2022.pdf

cc)   NM Info Exchange Attendee List, 3-24-22.xlsx

dd)   TCDM Master Course Guide 20200115 CODA Submission.pdf

ee)   3.1.7 Job Description Director of Clinical Education.pdf

ff)   3.1.6 Job Description Director of Pre-Clinical Education.pdf

gg)   3.1.8 Job Description Clinical Practice Leader.pdf

hh)   2.9.3 Public Relations Copy from Local Media.pdf

ii)   2.3.1 Course Listing by Year.pdf

jj)   2.2.3 Touro College Employee Handbook for Administrative Personnel.pdf

kk)   22-10-14 Touro NM Expansion CODA Responses_AAL (Draft) RM+JW+KH+RM.docx

ll)   CODA Steering Committee Minutes 7-24-19.docx

mm)   TCDM & NYMC Auditorium Specs.pdf

nn)   TCDM 19 Skyline Auditorium, Testing Center Specs.pdf

oo)   NYMC Auditorium Specs.pdf

pp)   TCDM 19 Skyline Conference Room Specs.pdf

qq)   Comments on Floor Plans Lovelace.pdf

rr)   TCDM NM Hiring Plan_05.01.2022.xlsx

ss)   TCDM NM Hiring Plan.xlsx

tt)   TCDM NM Class Size Increase Application_04.19.2022.docx

71.    It cannot be inferred from Farkas's conduct that he had any legitimate purpose for taking these documents. Farkas took the documents for his own gains, which can only be obtained by their use or disclosure to a competitor of Touro.

72.    On one of the very same days that Farkas downloaded thousands of Touro's documents, December 4, 2023, Farkas spoke briefly with Dr. Kadish, Touro's President, in this conversation, Farkas mentioned that he would be resigning.

---

[3] Note: Faculty name redacted for confidentiality.

73.     Unbeknownst to Dr. Kadish, Farkas had been preparing for his discussions with Dr. Kadish by misappropriating Touro's protected information.

74.     At the subsequent meeting on December 6, 2023, Farkas informed Dr. Kadish that he (Farkas) had signed an employment agreement with a competitor to be the founding dean of the competitor's new (and as-yet-to-be-formed) dental school.

75.     Farkas's download of 4,962 files, if divulged or used by him, his new employer (a competitor), or any third party in the higher education space, would provide the ability for that entity to replicate Touro's processes, decrease its time to obtain CODA accreditation and speed its ability to open the competitor's new dental school—all while using Touro's confidential information to the competitor's competitive advantage against Touro.

76.     Upon discovering the misappropriation of Protected Information, Touro sent Farkas a strongly worded cease-and-desist letter, which indicated that Touro would provide an affidavit/agreement to try and resolve this matter without Court intervention.

77.     The affidavit/agreement Touro proposed included certain terms, such as an acknowledgment of what Farkas took, how Farkas took it, and confirmation of whether he disclosed it to anyone.

78.     The affidavit/agreement also provided for an admission of wrongdoing and for Farkas to provide any devices used to take or to store the protected information to an IT vendor of Touro's choice for review to identify, isolate, and destroy any Touro Protected Information from the devices/storage media.

79.     Further, the affidavit/agreement required that, prior to the destruction of any of the documents, a comprehensive list of documents contained on the devices/storage media was to be provided to Touro by the IT vendor.

80. After providing the affidavit/agreement, Touro was informed that an attorney had been retained by the competitor to represent Farkas.

81. A litigation hold letter was also sent to Farkas.

82. Counsel for Touro and counsel for Farkas communicated regarding the proposed affidavit/agreement.

83. In these correspondence regarding the affidavit/agreement, undersigned counsel repeatedly made clear that, in the absence of quickly agreeing to the terms contained in the affidavit/agreement, Touro would seek remedies via litigation to protect its interests.

84. Additionally, a letter was obtained that authorized Touro to go to secular court rather than a Beis Din for an injunction in light of the stated exigency in this matter.

85. As of the date of this filing, Farkas has not agreed to the corrective measures proposed by Touro in the affidavit/agreement needed to adequately protect Touro's interests by ensuring the return, destruction, and non-use of Touro's Protected Information wrongfully in Farkas's possession.

86. Upon information and belief, Farkas is still in possession of - and/or perhaps has used, disclosed, or relied upon -- Touro's Protected Information in order to benefit himself and to compete against Touro.

87. Farkas's possession of Touro's documents for at least thirty days, without the protections provided by Touro's IT systems, leaves them vulnerable to further dissemination.

88. Farkas's possession of Touro's Confidential Information and Trade Secrets on devices that do not have any of the systemic protections mandated on Touro systems and devices places the data in jeopardy of disclosure through negligence or involuntary acts that it would not otherwise be exposed to but for his wrongful taking of the Protected Information.

89.     Armed with Touro's Protected Information and fully cognizant of his duties and obligations to Touro, Farkas is set to begin or may have already begun employment with a competitor that does not yet have a dental school.

90.     Upon information and belief, Farkas will inevitably disclose and continue to disclose and use Touro's Protected Information to compete directly against Touro.

91.     The documents contain the formula that Touro has and will use to open institutions of higher education in the medical, dental, physician assistant, and related fields.

92.     Thus, disclosure, or further disclosure, at any time of this information to competitors of Touro is something Touro goes to great efforts to prevent.

## FIRST CLAIM FOR RELIEF
### (Defend Trade Secrets Act)

93.     Touro repeats and realleges each and every allegation contained in Paragraphs 1 through 93 of the Complaint as if fully set forth herein.

94.     As a key employee of Touro, Farkas learned or had access to Touro's Confidential Information and Trade Secrets.

95.     Farkas has used or disclosed, or threatens to use or disclose, Touro's Confidential Information and Trade Secrets, using that information to provide services and products in competition to Touro, intended for use in the sale and purchase of products and/or services used in interstate or foreign commerce.

96.     Upon information and belief, Farkas's new employer, and/or other prospective or future employers of Farkas, have benefited or will benefit in the misappropriation of Touro's Confidential Information and Trade Secrets.

97.     Farkas is presently misappropriating Touro's Confidential Information and Trade Secrets, and using such information to the detriment of Touro.

98.     As a direct and proximate result of Farkas's actions, Touro has suffered and will continue to suffer extensive irreparable injury, loss of goodwill, harm to its business, and other injury and damages for which there is no adequate remedy at law.

99.     Touro will continue to suffer this harm unless and until Farkas is restrained from his current conduct.

100.     As a direct and proximate result of Farkas's actions, Touro is entitled to recover damages for its actual losses in an amount to be proven at trial, as provided by Section (3)(B)(i)(I) of the Defend Trade Secrets Act.

101.     As a direct and proximate result of Farkas's actions, Touro is entitled to recover any amounts that unjustly enriched Farkas, his new employer, and/or any other third party in an amount to be proven at trial, as provided by Section (3)(B)(i)(II) of the Defend Trade Secrets Act.

102.     Upon information and belief, Farkas committed these actions willfully and maliciously.

103.     Accordingly, Touro is entitled to recover actual and exemplary damages in an amount to be determined at trial, as well as attorneys' fees.

## SECOND CLAIM FOR RELIEF
### (Misappropriation of Trade Secrets)

104.     Touro repeats and realleges each and every allegation contained in Paragraphs 1 through 104 of the Complaint as if fully set forth herein.

105.     As a key and founding employee of TCDM, Farkas learned or had access to Touro's Confidential Information and Trade Secrets.

106.     Touro's Trade Secrets include, by way of illustration and without limitation: compilations of information on how to replicate Touro's processes, decrease the time to obtain CODA accreditation, and how to operate a dental school.

107.     This information was developed by Touro, and is not public information.

108.     Farkas downloaded over 4,962 documents on his way out the door to build a competitor program at a competing school.

109.     Many of the documents Farkas downloaded include Touro's Trade Secrets and Confidential Information.

110.     Farkas accessed and used or intends to use Touro's Trade Secrets and Confidential Information in violation of Farkas's duties to Touro.

111.     Farkas obtained Touro's Trade Secrets and Confidential Information as a result of discovery by improper means.

112.     Farkas has used or disclosed, or threatens to use or disclose, Touro's Confidential Information and Trade Secrets.

113.     Farkas is presently misappropriating Touro's Confidential Information and Trade Secrets, and using such information to the detriment of Touro.

114.     As a direct and proximate result of Farkas's conduct, Touro has suffered and will continue to suffer extensive irreparable injury, loss of goodwill, harm to its business, and other injury and damages for which there is no adequate remedy at law.

115.     Touro will suffer this harm unless and until Farkas is restrained from his current and intended conduct.

116.     As a direct and proximate result of Farkas's conduct, Touro has suffered and will continue to suffer damages, which continue to accrue in the form of attorneys' fees and costs related to this litigation, and lost business in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
### (Breach of Fiduciary Duties and Common Law Duty of Loyalty)

117.     Touro repeats and realleges each and every allegation contained in Paragraphs 1 through 117 of the Complaint as if fully set forth herein.

118.     Farkas was acting in a fiduciary capacity when he served as Vice Dean of the TCDM.

119.    Farkas was employed by Touro in a position of trust and confidence.

120.    By virtue of his position at Touro, Farkas owed a fiduciary duty and a duty of loyalty to Touro both during and after his employment and was obligated not to subvert or misappropriate Touro's Confidential Information and Trade Secrets.

121.    Farkas breached the fiduciary duty he owed to Touro by subverting or misappropriating Touro's Confidential Information and Trade Secrets.

122.    Farkas sought to obtain an improper advantage by misappropriating Touro's Confidential Information and Trade Secrets, at Touro's expense, when he downloaded over 4,962 documents between December 1, 2023 and December 4, 2023.

123.    An intent to seek an improper advantage is clear from both the documents Farkas downloaded, and the timing of the downloads.

124.    For example, December 4, 2023 is one of the days that Farkas downloaded thousands of documents; it is also the same day Farkas advised Touro President, Dr. Alan Kadish, that he wished to speak to him regarding his resignation (without officially tendering his resignation).

125.    And on December 6, 2023, two days after Farkas finished downloading thousands of documents, Farkas announced his intent to Dr. Kadish to resign and join a competitor as its Founding Dean of its as-yet-to-be-formed dental school.

126.    As a direct and proximate result of Farkas's breach of his fiduciary duties Touro has suffered and will continue to suffer extensive irreparable injury, loss of goodwill, harm to its business, and other injury and damages for which there is no adequate remedy at law.

127.    Touro will continue to suffer this harm unless and until Farkas is restrained from taking further actions in breach of his fiduciary duties to Touro.

128.    As a direct and proximate result of Farkas's breach of his duty of loyalty, Touro has suffered and will continue to suffer extensive irreparable injury, loss of goodwill, harm to its business, and other injury and damages for which there is no adequate remedy at law.

129.    Touro will continue to suffer this harm unless and until Farkas is restrained from taking further actions in breach of his fiduciary duties to Touro.

130.    As a direct and proximate result of Farkas's breach of his duty of loyalty, Touro has suffered and will continue to suffer additional damages, which continue to accrue in the form of attorneys' fees and costs related to this litigation, and lost business in an amount to be proven at trial.

### FIFTH CLAIM FOR RELIEF
### (Tortious Interference with Existing and Prospective Business Relationships

131.    Touro repeats and realleges each and every allegation contained in Paragraphs 1 through 131 of the Complaint as if fully set forth herein.

132.    As a result of his employment with Touro, Farkas was intimately familiar with, and had detailed knowledge concerning, the business relationships that existed between Touro and certain donors, third parties, and/or students.

133.    Farkas intentionally, with malice, and without privilege or justification, interfered with Touro's business relationships with certain donors, third parties, and/or students using unfair or improper means, and/or with the intent to interfere with such relationships.

134.    Touro possesses a protectable interest in its contracts and relations with its donors, third parties, and students, in that it has a reasonable expectation of their continued association with Touro.

135.    Farkas's conduct was undertaken with malice, or in knowing disregard of or indifference to, the rights and interests of Touro.

136.     As a direct and proximate result of Farkas's interference, Touro suffered and will continue to suffer extensive irreparable injury, loss of goodwill, harm to its business, and other injury and damages for which there is no adequate remedy at law.

137.     Touro will suffer this harm unless and until Farkas is restrained from his respective current and intended conduct.

138.     As a direct and proximate result of Farkas's interference, Touro suffered and will continue to suffer damages, which continue to accrue in the form of attorneys' fees and costs related to this litigation, and lost business in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF
### (Unfair Competition)

139.     Touro repeats and realleges each and every allegation contained in Paragraphs 1 through 139 of the Complaint as if fully set forth herein.

140.     Farkas has engaged in unfair methods of competition, as set forth above.

141.     The aforementioned conduct has resulted in the pirating of Touro's Confidential Information and Trade Secrets.

142.     Farkas was and is driven by unlawful predatory motives and malice, or acted in knowing or reckless disregard of the rights and interests possessed by Touro in his attempt to obtain an unfair advantage over Touro and to damage or injure Touro in the industries within which Touro has or will have competitors.

143.     As a direct and proximate result of Farkas's conduct, Touro has been damaged in that, by way of illustration and without limitation: (1) the name, reputation and goodwill of Touro has or will be damaged; (2) Touro has or will lose business, in an amount unable to be ascertained at this time; and (3) the damages suffered by Touro are expected to continue and multiply by reason of ongoing breaches by Farkas.

144.     As a direct and proximate result of Farkas's conduct, jointly and severally, Touro has suffered and will continue to suffer extensive irreparable injury, loss of goodwill,

harm to its business, and other injury and damages for which there is no adequate remedy at law.

145.    Touro will suffer this harm unless and until Farkas is restrained from his current and intended conduct.

146.    As a direct and proximate result of Farkas's unlawful competition, Touro has suffered and will continue to suffer damages, which continue to accrue in the form of attorneys' fees and costs related to this litigation, and lost business in an amount to be proven at trial.

**SEVENTH CLAIM FOR RELIEF**
**(Breach of the Faithless Servant Doctrine)**

147.    Touro repeats and realleges each and every allegation contained in Paragraphs 1 through 147 of the Complaint as if fully set forth herein.

148.    Under New York state law, an employee is obligated to be loyal to his employer and is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties.

149.    Moreover, an employee has an affirmative duty to act in a manner consistent with his agency and exercise good faith and loyalty.

150.    The faithless servant doctrine provides that one who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary.

151.    As follows, an employer is entitled to recover from his unfaithful agent any commission paid by the principal and/or withhold compensation for services rendered by such an employee.

152.    Farkas's misappropriation of Trade Secrets and Confidential Information while still employed with Touro was unfaithful conduct.

153.    As a direct and proximate result of Farkas's faithless conduct, Touro has suffered and will continue to suffer extensive irreparable injury, loss of goodwill, harm to its business, and other injury and damages for which there is no adequate remedy at law.

154.    As a direct and proximate result of Farkas's faithless conduct, Touro has suffered and will continue to suffer damages, which continue to accrue in the form of attorneys' fees and costs related to this litigation, and lost business in an amount to be proven at trial.

**WHEREFORE**, Touro respectfully requests that judgment be made and entered against Farkas and in favor of Touro, as follows:

(a)    Enjoining and restraining Farkas, and any person or entity acting in concert with him or under his supervision, from misappropriating, possessing, using, disclosing or disseminating Touro's confidential information and trade secrets;

(b)    Enjoining and restraining Farkas, and any person or entity acting in concert with him or under his supervision, from any other actions in violation of Farkas's obligations or fiduciary duties owed to Touro;

(c)    Requiring Farkas to return all Touro property in his possession, including but not limited to laptops and devices;

(d)    Requiring Farkas to produce all devices and storage media he used to access, posses, use, and/or disclose Touro's Confidential Information and Trade Secrets to an IT vendor or otherwise to a Receiver/Special Master appointed by this Honorable Court, so that Touro's Confidential Information and Trade Secrets contained thereon may be identified, isolated, and destroyed;

(e)    Awarding compensatory damages and interest to Touro, in an amount to be determined at trial;

(f)     Awarding damages for any unjust enrichment damages caused by the misappropriation of Touro's trade secrets that are not addressed in computing damages for actual losses to Touro, in an amount to be determined at trial;

(g)     Awarding exemplary and punitive damages;

(h)     Granting Touro its costs and disbursements incurred in connection with this litigation, including attorneys' fees; and

(i)     Awarding any other further relief the Court may deem just and proper.

Dated: January 5, 2024
New York, New York

**COZEN O'CONNOR**

_s/ Mariah S. Passarelli_                           
Mariah S. Passarelli
(Admitted _pro hac vice_)
One Oxford Centre
301 Grant Street, 41st Floor
Pittsburgh, PA 15219
Telephone: (412) 620-6502
Email: mpassarelli@cozen.com

Janice Sued Agresti
3 World Trade Center
175 Greenwich Street, 55th Floor
New York, NY 10007
(212) 509-9400
mpassarelli@cozen.com
jagresti@cozen.com
_Attorneys for Plaintiff_

## CERTIFICATE OF SERVICE

I hereby certify that on today's date, a true and correct copy of the foregoing was served via

email on:

Gary Snitow
590 Madison Ave.
6th Floor
New York, NY   10022
Gary.Snitow@offitkurman.com

The document is also available for viewing and downloading on ECF for all parties of record.


            */s/ Janice Sued Agresti*
            Janice Sued Agresti

New York, NY

Dated: January 5, 2024