**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TOURO UNIVERSITY

        Plaintiff,

    -against-

EDWARD F. FARKAS

        Defendant.

Case No.:

---

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

---

COZEN O'CONNOR
3 WTC 175 Greenwich Street
55th Floor
New York, NY 10007
(212) 509-9400

*Attorneys for Plaintiff*

67855144\1

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ........................................................................................ 1

II.   FACTUAL BACKGROUND ......................................................................................... 2

    A.   Touro College of Dental Medicine ................................................................. 2

    B.   Edward F. Farkas Takes On Key Role and Touro Provides Him With Access to
Confidential Information and Trade Secrets ................................................................ 3

    C.   Touro's Confidential Information and Documents .......................................... 3

    D.   Farkas Misappropriates Touro's Trade Secrets .............................................. 6

    E.   Touro's Efforts to Resolve Misappropriation Concerns Without Court Intervention ........ 8

    F.   Time Is Of The Essence ................................................................................. 9

III.  ARGUMENT .......................................................................................................... 10

    A.   Legal Standard ............................................................................................. 10

    B.   Touro Will Suffer Irreparable Harm Absent Injunctive Relief ....................... 10

    C.   Touro Has A Likelihood Of Success On The Merits Or Sufficiently Serious Questions
Going to The Merits To Make Them Fair Ground For Litigation ............................ 12

    D.   A Balancing of the Equities Tips in Favor of Granting Preliminary Injunctive Relief .... 18

    E.   Touro Should Not Need To Post A Bond ...................................................... 20

IV.   CONCLUSION ........................................................................................................ 20

67855144\1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Andino v. Fischer,*
 555 F. Supp. 2d 418 (S.D.N.Y. 2008) .......................................................................... 10

*Asa v. Pictometry Int'l Corp.,*
 757 F. Supp. 2d 238 (W.D.N.Y. 2010) ........................................................................19

*Ashland Management Inc. v. Janien,*
 82 N.Y.2d 395 N.E.2d 1007 N.Y.S.2d 912 (1993) ....................................................... 14

*Better Holdco, Inc. v. Beeline Loans, Inc.,*
 No. 20CIV8686JPCSN, 2023 WL 2711417 (S.D.N.Y. Mar. 30, 2023) ...................... 13

*CBS Corp. v. Dumsday,*
 268 A.D.2d 350 N.Y.S.2d 248 (1st Dep't 2000) ........................................................... 16

*Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.,*
 598 F.3d 30 (2d Cir. 2010) ............................................................................................ 10

*Design Strategies, Inc. v. Davis,*
 384 F.Supp.2d 649 (S.D.N.Y.2005) .............................................................................. 15

*Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.,*
 922 F. Supp. 2d 435 (S.D.N.Y. 2013), *aff'd,* 764 F.3d 210 (2d Cir. 2014) ................. 10

*IDG USA, LLC v. Schupp,*
 416 F. App'x 86 (2d Cir. 2011) ..................................................................................... 10

*Innoviant Pharmacy, Inc. v. Morganstern,*
 390 F. Supp. 2d 179 (N.D.N.Y. 2005) .......................................................................... 12

*LaChapelle v. Fenty,*
 812 F. Supp. ....................................................................................................................17

*Lamdin v. Broadway Surface Adver. Corp.,*
 272 N.Y. 133 N.E.2d 66 (1936) ..................................................................................... 15

*Laro Maint. Corp. v. Culkin,*
 700 N.Y.S.2d 490 (2d Dep't 1999) ............................................................................... 17

*Mosionzhnik v. Chowaiki,*
 41 Misc. 3d 822 N.Y.S.2d 841 (Sup. Ct. 2013) ............................................................18

*N. Atl. Instruments, Inc. v. Haber,*
 188 F.3d 38 (2d Cir. 1999) ...................................................................................... 13, 16

*Panos v. Mid Hudson Med. Grp., P.C.*,
204 A.D.3d 1016 N.Y.S.3d 539 (2022) ..................................................................... 18

*Phansalkar v. Andersen Weinroth & Co., L.P.*,
344 F.3d 184 (2d Cir.2003) .................................................................................... 15

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*,
813 F. Supp. 2d 489 (S.D.N.Y. 2011) ................................................................. 15, 16

*R.L.E. Corp. d/b/a Casa Imports v. Ferraro Foods, Inc.*,
No. 6:15-cv-123, 2015 WL 1456178 (N.D.N.Y. March 30, 2015) ............................. 20

*Softel, Inc. v. Dragon Med. & Scientific Communications, Inc.*,
118 F.3d 955 (2d Cir.1997) .................................................................................... 14

*Stuart's, LLC v. Edelman*,
196 A.D.3d 711 (N.Y. App. Div. 2021) .............................................................. 17, 18

*Ticor Title Ins. Co. v. Cohen*,
173 F.3d 63 (2d Cir. 1999) ..................................................................................... 12

*Uni-World Capital, L.P. v. Preferred Fragrance, Inc.*,
73 F. Supp. 3d 209(S.D.N.Y. 2014) ......................................................................... 11

*W. Elec. Co. v. Brenner*,
41 N.Y.2d 291 N.Y.S.2d 409 N.E.2d 1091 (1977) ..................................................... 15

**Statutes**

18 U.S.C.A. § 1836 ....................................................................................................... 13

Defend Trade Secrets Act ............................................................................................. 14

**Other Authorities**

Fed. R. Civ. P. Rule 65 ......................................................................................... 5, 11, 13

Restatement of Torts § 757 cmt. b (1939) ...................................................................... 17

Touro University (formerly Touro College) ("Touro"), by and through its undersigned counsel, and pursuant to Rule 65 of the Federal Rules of Civil Procedure, file this Memorandum of Law in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction against Edward F. Farkas.

## I.    PRELIMINARY STATEMENT

Defendant Dr. Edward F. Farkas ("Farkas") was previously employed as the Vice Dean of the Touro's College  of Dental Medicine at New York Medical College ("TCDM").  Prior to departing Touro in order to accept employment at Touro's direct competitor, Yeshiva University ("YU") – for the stated purpose of starting a dental school there – Farkas brazenly downloaded over 4,962 documents between December 1, 2023 and December 4, 2023 alone.  Many of these documents include Confidential Information and Trade Secrets regarding the business of TCDM and Touro Dental Health (TCDM's clinic), including but not limited to its systems, building plans, vendors, expenses, employees, and students ("Protected Information").  This information would undeniably permit Farkas to unfairly compete with Touro.

Upon discovering this, Touro requested that Farkas agree to return its Protected Information.  Specifically, Touro requested that Farkas produce any device or storage media he used to download/store the Protected Information to a third-party IT vendor so that a forensic review might be conducted, and Touro's Protected Information identified, isolated, and destroyed for Touro's protection.  Although Farkas has not denied downloading the Protected Information – nor provided any reasonable, lawful reason for doing so – he has to date refused to meaningfully cooperate with Touro's efforts to resolve this matter amicably, despite being specifically warned that it failure to do so would result in Touro seeking judicial remedies.

Upon information and belief, Farkas will begin employment at YU in the coming days, still in possession of some 5,000 Touro documents containing its Protected Information.

Additionally, Farkas's possession of Touro's documents for at least thirty days, without the protections provided by Touro's IT systems, leaves them vulnerable to further dissemination. Thus, Touro seeks emergency injunctive relief against Farkas to return its Protected Information, and prevent him from causing further irreparable harm to Touro by misappropriating Touro's Confidential Information and Trade Secrets and breaching his obligations to Touro.

## II.    FACTUAL BACKGROUND

### A.    <u>Touro College of Dental Medicine</u>

The Touro College of Dental Medicine ("TCDM") at New York Medical College ("NYMC") is a division of the Touro University System. (ECF 1, ¶ 12; Myers Aff. ¶ 1). It is located on the NYMC campus in Hawthorne, New York. (ECF 1, ¶ 13; Myers Aff. ¶ 2). TCDM is the first dental school in the nation run under Jewish auspices. (ECF 1, ¶ 22; Myers Aff. ¶ 3). TCDM was created using Touro's scalable, repeatable and sustainable method and formula for opening institutions of higher education in a uniquely efficient manner. (ECF 1, ¶ 35; Myers Aff. ¶ 4). TCDM is a leading teaching and research institution and an institutional innovator fully committed to the principles of diversity. (ECF 1, ¶ 24; Myers Aff. ¶ 5). TCDM is sponsored by Touro and carries full accreditation without reporting requirements of the Commission on Dental Accreditation  (CODA). (ECF 1, ¶ 24; Myers Aff. ¶ 6).  Its primary educational offering is an educational program leading to the D.D.S. degree. (ECF 1, ¶ 25; Myers Aff. ¶ 7).

Since enrolling its first class in July 2016, TCDM has graduated over 440 students who have gone on to some of the most sought-after residency and specialty programs throughout the country, matching to these programs at a significantly higher rate than the national average. (ECF 1, ¶ 26; Myers Aff. ¶ 8). The students have exceeded expectations in first time national board pass rates and currently the class of 2024 has a 100% success rate. (ECF 1, ¶ 27; Myers Aff. ¶ 9).  TCDM has also exceeded the first-time pass rate on the clinical licensing examination in all areas.  (ECF

1, ¶ 28; Myers Aff. ¶ 10). Through use of its digital clinical infrastructure, TCDM provides its students with the platform of success for their professional career as the technology for oral health care changes. (ECF 1, ¶ 29; Myers Aff. ¶ 11).

**B.**     **Edward F. Farkas Takes On Key Role and Touro Provides Him With Access to Confidential Information and Trade Secrets**

Touro University (at the time, Touro College) and Farkas began discussions in 2015 regarding the feasibility of a new Touro dental school. (ECF 1, ¶ 15; Myers Aff. ¶ 12). After some discussions, the plan was greenlit and efforts to build a dental school on the campus of NYMC came to life. (ECF 1, ¶ 16; Myers Aff. ¶ 13). Farkas assumed the role of Vice Dean under the Founding Dean Goldsmith. (ECF 1, ¶ 20; Myers Aff. ¶ 14). After attaining regulatory approvals and accreditation from New York State and initial accreditation status from the Council on Dental Accreditation ("CODA"), the first class of the new dental school enrolled in July 2016. (ECF 1, ¶ 21; Myers Aff. ¶ 15).

In his role as Vice Dean, Farkas was responsible for many facets of the administration of the dental school including but not limited to information technology, design, and implementation in coordination with the IT Department of the Touro. (ECF 1, ¶ 31; Myers Aff. ¶ 16).  Indeed, due to his senior role at the dental school, Farkas had access and control over nonpublic files that were not otherwise available and that were specifically protected from people in other subordinate roles, including Touro's Confidential Information and Trade Secrets. (ECF 1, ¶ 32; Myers Aff. ¶ 17).

**C.**     **Touro's Confidential Information and Documents**

Farkas was privy to nonpublic information including the processes to develop and implement a dental school and corresponding regulatory and accreditation processes, course curricula and materials, donor lists, and the information needed to develop future programs. (ECF 1, ¶ 33; Myers Aff. ¶ 18). This process to develop and implement a dental school is formulated from

Touro's scalable, repeatable and sustainable to open higher education institutions in the healthcare field in a uniquely efficient manner. (ECF 1, ¶ 34; Myers Aff. ¶ 19).  Touro has invested time, resources, and talent to develop a model that allows it to build programs, refine those programs, and then replicate those programs – including the creation of a dental school. (ECF 1, ¶ 60; Myers Aff. ¶ 45).  TCDM's Confidential Information and/or Trade Secrets include:

- Construction projects planned and completed, including architectural plans and renderings that were created, approved and utilized. This includes the Clinical Facility, Pre-Clinical Simulation Laboratory, Examination Center, Konikoff Education Center, Orthodontic Clinical Facility, the Student Lounge, and Faculty Offices. (ECF 1, ¶ 36; Myers Aff. ¶ 20).

- Development Agreements, including the ProHealth DSO. (ECF 1, ¶ 37; Myers Aff. ¶ 21).

- Documents and information related to its accreditation. This includes documents and processes for initial application in 2015, documents and processes for mid-cycle site visit in April, 2018, documents and processes for a final site visit in April, 2020 (which was postponed), documents and processes for a virtual site visit in April, 2021, production and submission of documents for acceptance of Advanced Standing Students in December, 2021, production and submission of documents for increased enrollment, initial submission in May, 2022, and supplemental information provided in November, 2022. (ECF 1, ¶ 38; Myers Aff. ¶ 22).

- Production and submission of application for Orthodontics and Dentofacial Orthopedics, which was submitted in January 2022, supplemental information submitted in August, 2022, and a New York State submission in January, 2023. (ECF 1, ¶ 39; Myers Aff. ¶ 23).

- All site visit arrangements, calendars, mock visits, and schedules associated with any of the above documents and processes. (ECF 1, ¶ 40; Myers Aff. ¶ 24).

- Curricula development. (ECF 1, ¶ 41; Myers Aff. ¶ 25).

- Certain syllabi that have been created, and various teaching modalities that have been used. (ECF 1, ¶ 42; Myers Aff. ¶ 26).

- Videos, OSCE examinations that have been created, and all program examinations. (ECF 1, ¶ 43; Myers Aff. ¶ 27).

- Affiliation agreements with St. Joseph's Hospital Center, Montefiore Medical Center, New York Presbyterian Queens, St. Barnabas, Westchester Medical Center,

Ossining Open Door, and Anderson Center for Autism. (ECF 1, ¶ 44; Myers Aff. ¶ 28).

- Global integration chairside of digital workflows and data capture. (ECF 1, ¶ 45; Myers Aff. ¶ 29).

- Clinical policies and manuals. (ECF 1, ¶ 46; Myers Aff. ¶ 30).

- TCDM's Infection Prevention Manual. (ECF 1, ¶ 47; Myers Aff. ¶ 31).

- TCDM's Standing Committee Structure, including the Curriculum Committee, the Student Academic Performance and Review Committees, the Faculty Forum, the Executive Committee of the Faculty Forum, the Admissions Committee, and the Appointment and Promotions Committee. (ECF 1, ¶ 48; Myers Aff. ¶ 32).

- Committees of Appointment, including the Infection Prevention Committee and its monitoring processes, inspection logs, and manifests for regulated waste disposal. (ECF 1, ¶ 49; Myers Aff. ¶ 33).

- Information regarding TCDM's Instrument and Materials Committee, including the evaluation processes and material formulary. (ECF 1, ¶ 50; Myers Aff. ¶ 34).

- Information about the Outcomes Assessment Committee, including information such as grids of goals and outcomes. (ECF 1, ¶ 51; Myers Aff. ¶ 35).

- Information about the Quality Assurance Committee, including standards of care and measures. (ECF 1, ¶ 52; Myers Aff. ¶ 36).

- Information about TCDM's Academic Integrity Committee. (ECF 1, ¶ 53; Myers Aff. ¶ 37).

- Information about TCDM's Continuing Education Committee. (ECF 1, ¶ 54; Myers Aff. ¶ 38).

- Information about Performance Indicators developed. (ECF 1, ¶ 55; Myers Aff. ¶ 39).

- TCDM's financial statements. (ECF 1, ¶ 56; Myers Aff. ¶ 40).

- Documents and information related to Touro's Operations. (ECF 1, ¶ 57; Myers Aff. ¶ 41).

- TCDM's Student Handbook, Course Catalog, Faculty Handbook Addendum to the Touro College Faculty Handbook, and its Environmental and Safety Manual. (ECF 1, ¶ 58; Myers Aff. ¶ 42).

- Information about TCDM's Business Office policies and procedures. (ECF 1, ¶ 59; Myers Aff. ¶ 43).

- Information about and documents from Touro Dental Health (TCDM's clinic). (ECF 1, ¶ 60; Myers Aff. ¶ 44).

Touro takes great care to protect its confidential information and documents. (ECF 1, ¶ 61; Myers Aff. ¶ 46). Touro protects its Confidential Information and Trade Secrets by password protecting its computers, network and other databases, the use of two factor authentication, a digital workspace solution that delivers secure access to applications, restricting access to certain databases to those that require the Confidential Information and Trade Secrets stored therein, providing employees with University-owned emails, restricting access to its facilities and key file cabinets, requiring that employees return all Confidential Information and Trade Secrets upon termination of employment, requiring confidentiality from employees, and regularly training employees. (ECF 1, ¶ 62; Myers Aff. ¶ 46).

D.    **Farkas Misappropriates Touro's Trade Secrets**

In 2022 and 2023, if not earlier, upon information and belief, Farkas began seeking other opportunities either at existing dental schools or dental schools in development. (ECF 1, ¶ 63). Upon information and belief, in the fall of 2023, he approached a competitor regarding its desire to develop and start a dental school. (ECF 1, ¶ 64). Furthermore, notwithstanding his duties of loyalty, care and to act in good faith with respect to Touro, upon information and belief he began consulting with one or more competitors in the higher education space, whilst still employed by Touro (and thus owing it a fiduciary duty). (ECF 1, ¶ 65).

Upon information and belief, on or about July, 2023, if not earlier, Farkas began downloading Touro trade secrets, confidential information and intellectual property, collectively "Protected Information" from his Touro Box account to a personal device, as well as a Touro-owned device in his personal possession. (ECF 1, ¶ 67). Touro's Information Technology

Department conducted an analysis of Farkas's Touro-issued computer account and emails, and learned that Farkas downloaded 4,962 Touro files between December 1, 2023 and December 4, 2023 alone. (ECF 1, ¶ 68; Picari Aff. ¶ 5). Thousands of the downloaded files contain Touro's Confidential Information and Trade Secrets. Such as, without limitation:

- List of Faculty Development Programs.pdf
- Risk Assessment Instrument from the EMR.pdf
- Research Grants.pdf
- SGA Bylaws.pdf
- [CLIENT NAME REMOVED FOR CONFIDENTIALITY] Hospital Agreement.pdf
- TCDM Summative Examinations vs 12 CODA Standards Grid.pdf
- TCDM Competencies vs. 12 CODA Standards.pdf
- Touro College Strategic Plan.pdf
- CODA Steering Committee  Agenda 5-15-19.docx
- 1.2.3 TCDM Assessment Calendar July 2019-June 2020.pdf
- 1.8.1 Touro College Middle States Accreditation Status.pdf
- 2.4.3 Curriculum Map.pdf
- Exhibit 7 - Alumni Survey for PG Ortho draft (1).docx
- Exhibit 77 - Syllabus Research Methods and Biostatistics.docx
- Exhibit 1 - Outcomes Assessment PG Ortho Goals, Outcomes (Appendix B).docx
- Exhibit 33 - Minutes TCDM Advanced Education in Orthodontics and Dentofacial Orthopedics faculty meeting 20211215.docx
- Exhibit 6 - Orthodontic Case Completion Form Template for Electronic Health Record.docx
- Exhibit 57 - Emergency Cart Inspection Log template.png
- Exhibit 75 - Curriculum Map PG Orthodontics and Dentofacial Orthopedics.xlsx
- Steering Committee - CODA 2020 and 2021
- TCDM Discounts
- [FACULTY NAME REMOVED FOR CONFIDENTIALITY] @touro.edu - 's Files and Folders
- TCDM NM Hiring Plan_05.01.2022 (1).xlsx
- TCDM NM Hiring Plan_05.01.2022.xlsx
- building14A_roof.dgn
- Citi Business Statement June 2021.pdf
- Guidelines for increased enrollment.pdf
- Citi Business Statement May 2022.pdf
- NM Info Exchange Attendee List, 3-24-22.xlsx
- TCDM Master Course Guide 20200115 CODA Submission.pdf

(ECF 1, ¶ 70, subparagraphs a-ss; Picari Aff. ¶ 7).

The timing of these downloads was no coincidence. (ECF 1, ¶ 72). On December 4, 2023, Farkas met briefly with Touro's President, Dr. Alan Kadish and, during this meeting, mentioned that he (Farkas) intended to resign from Touro, although he did not tender his resignation at that time. (ECF 1, ¶ 72; Kadish Aff. ¶ 8). At their subsequent meeting on December 6, 2023, Farkas informed Dr. Kadish that he (Farkas) had signed an employment agreement with a competitor to be the founding dean of the competitor's as-yet-to-be-formed dental program, and would therefore be resigning from Touro.[1] (ECF 1, ¶ 74; Kadish Aff. ¶ 11). Farkas's download of close to five thousand files, if divulged or used by him or his new employer (Touro's direct competitor), would provide the ability for the competitor to replicate Touro's processes, decrease its time to obtain CODA accreditation, and speed its ability to open a new dental school —all while using Touro's confidential information to its competitive advantage against Touro. (ECF 1, ¶ 75).

**E.**     **Touro's Efforts to Resolve Misappropriation Concerns Without Court Intervention**

Upon discovering the misappropriation of protected information, Touro sent Farkas a strongly worded cease and desist letter, which indicated that Touro would provide an affidavit/agreement for him to sign acknowledging what he took, how he took it and whether he disclosed it to anyone under separate cover. (ECF 1, ¶ 76). The proposed affidavit/agreement also contained an admission of wrongdoing and for Farkas to provide any devices/storage media he used to take or to store the protected information to an IT vendor of Touro's choice for review to identify, isolate and destroy any Touro Protected Information contained thereon. (ECF 1, ¶ 78). Further, the proposed affidavit/agreement required that, prior to the destruction of any of the documents, a comprehensive list of documents was to be provided to Touro by the IT vendor.

---

[1] When Touro later discovered that Farkas had downloaded Touro's Protected Information in the manner described above and subsequently refused to return it, Touro terminated Farkas' employment for cause prior to the date on which Farkas' resignation was to become effective.

(ECF 1, ¶ 79). After providing the proposed affidavit/agreement to Farkas, Touro was informed that an attorney had been retained by the competitor to represent Farkas. (ECF 1, ¶ 80). A litigation hold letter was sent to Farkas. (ECF 1, ¶ 81). Additionally, a letter was obtained from the Beis Din, that authorized Touro to go to court for an injunction in light of the stated exigency in this matter. (ECF 1, ¶ 83).

On or about December 27, 2023, and for several days following, counsel for Touro and counsel for Farkas communicated regarding the proposed affidavit/agreement.  (ECF 1, ¶¶ 76-82). Counsel for Touro made clear that, unless Farkas agreed to the substantive terms set forth in the proposed affidavit/agreement, Touro would be left with no choice but to seek relief from the Court. (ECF 1, ¶ 83). As of the date of this filing, Farkas has not agreed to the corrective measures to set forth in the affidavit/agreement.  (ECF 1, ¶ 87).

On information and belief, Farkas is still in possession of - and/or has perhaps used, disclosed or relied upon - Touro's Confidential Information and Trade Secrets in order to benefit himself and to compete against Touro. (ECF 1, ¶ 89). Armed with Touro's Confidential Information and Trade Secrets and fully cognizant of his obligations to Touro, Farkas is set to begin employment with a competitor that does not yet have a dental school.  (ECF 1, ¶ 91). Upon information and belief, Farkas will inevitably disclose and continue to disclose and use Touro's Confidential Information and Trade Secrets to compete directly against Touro unless he is required by this Honorable Court to take the corrective measures requested herein.[2] (ECF 1, ¶ 92).

## F.  Time Is Of The Essence

---

[2] Touro University provided Cozen O'Connor with Farkas's Personal Storage Table ("PST"), which is a file format Microsoft programs use to store items like calendar events, contacts, and email messages. Farkas's PST contained over 358,796 emails and attachments. After deduplication, Cozen O'Connor ran search terms, which resulted in 30,887 emails and attachments. By way of further example of Farkas's mishandling of Touro's Protected Information, those emails and attachments show that Farkas conducted substantial Touro business from his personal Gmail accounts. (*See* Minnetti Aff. ¶¶ 1-9 and Picari Aff. ¶¶ 1-7).

Time is of the essence in this case because Farkas is still in possession of Touro's Protected Information. (ECF 1, ¶¶ 87, 89). The Protected Information in Farkas's possession includes the formula that Touro has and will use to open institutions of higher education in the medical, dental, physician assistant, and related fields. Disclosure, or further disclosure, at any time of this information to competitors of Touro is something Touro goes to great efforts to prevent. (ECF 1, ¶ 88). Upon information and belief, Farkas is set to begin employment at a direct competitor of Touro's in the coming days. Moreover, Farkas currently possesses this Protected Information without the necessary data safeguards used by Touro, such that it is subject to use by other third parties at any time.

## III.    ARGUMENT

### A.    <u>Legal Standard</u>

Plaintiff is entitled to injunctive relief under Fed. R. Civ. P. 65. In the Second Circuit, a plaintiff seeking a preliminary injunction must establish: '(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 922 F. Supp. 2d 435, 439 (S.D.N.Y. 2013), aff'd, 764 F.3d 210 (2d Cir. 2014) (citing *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010)). The same standard applies to an application for a temporary restraining order. *See Andino v. Fischer, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008)* ("It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction.").

### B.    <u>Touro Will Suffer Irreparable Harm Absent Injunctive Relief</u>

"To establish irreparable harm, a plaintiff must establish both that an injury is likely absent the injunction and that the injury cannot be adequately remedied with money damages." *IDG USA,*

*LLC v. Schupp*, 416 F. App'x 86, 88 (2d Cir. 2011). There is no question that Touro will suffer irreparable harm without injunctive relief.

First, Touro is more than "likely" to be injured further absent injunctive relief. To be sure, Farkas has repeatedly demonstrated his willingness to breach his legal obligations to Touro. While employed and on his way out the door, Farkas downloaded over 4,962 documents, many of which were confidential.[3] It cannot be inferred from his conduct that he had any legitimate purpose for taking these documents. Farkas took the documents for his own gains, which can only be obtained by their use or disclosure to a competitor of Touro. Notably, Farkas had an opportunity to resolve this matter pre-litigation by executing an affidavit and returning to Touro its confidential information, but refused to do so. That Farkas continues his breaches, despite express notice from Touro and demands that he turn over the documents he took, confirms that he will continue to breach his obligations to Touro unless injunctive relief is granted.

Second, Touro's injury cannot be adequately remedied with money damages. Touro is currently the only University of its kind in the region with a  dental school. And now, Farkas is seeking to enable a competitor to join the space using Touro's formula. The consequences for Touro are unquantifiable, and will likely include the loss of proprietary information, student enrollment, a potential decrease in quality of applicants, loss of donors, and a complete loss of the confidential information that helps it create programs, refine them, and replicate them. *See Uni-World Capital, L.P. v. Preferred Fragrance, Inc.,* 73 F. Supp. 3d 209, 236(S.D.N.Y. 2014) (noting

---

[3] Cozen O'Connor is currently in possession of Farkas's Personal Storage Table ("PST"), which is a file format Microsoft programs use to store items like calendar events, contacts, and email messages. Farkas's PST contained over 358,796 emails and attachments. After deduplication, Cozen O'Connor ran search terms, which resulted in 30,887 emails and attachments. By way of further example of Farkas's mishandling of Touro's Protected Information, those emails and attachments show that Farkas conducted substantial Touro business from his personal Gmail accounts.  *See* Minnetti Affidavit.

that losing client relationships and goodwill can be remedied only by monetary damages in unusual circumstances); *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) ("it would be very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come"). The number of students who will ultimately choose to attend a competitor's dental program, developed using Touro's systems and confidential information, is not quantifiable.

Furthermore, the use of an employer's confidential information and trade secrets to damage its competitive position is well recognized as a cause of irreparable harm. *Innoviant Pharmacy, Inc. v. Morganstern*, 390 F. Supp. 2d 179 (N.D.N.Y. 2005) ("Employer would suffer irreparable harm if its former sales representative was not preliminarily enjoined from using confidential trade information in his new position with competitor."). Touro will undeniably suffer all of the above forms of irreparable harm unless Farkas's misconduct is enjoined. Touro made a long-term investment of significant resources to develop its Confidential Information and Trade Secrets. Touro will be irreparably harmed if Farkas is permitted to reap the benefits of Touro's investment in its Confidential Information and Trade Secrets by continuing to misappropriate and by potentially using Touro's Confidential Information and Trade Secrets to Touro's detriment unless Farkas is required to return, and certify his return, of all such information.  Even if this Court is not convinced of any ill intent on the part of Farkas, Farkas' possession of Touro's Confidential Information and Trade Secrets on devices that do not have any of the systemic protections mandated on Touro systems and devices places the data in jeopardy of disclosure through negligence or involuntary acts that it would not otherwise be exposed to but for Farkas' wrongful taking of the Protected Information.

**C.**     **Touro Has A Likelihood Of Success On The Merits Or Sufficiently Serious Questions Going to The Merits To Make Them Fair Ground For Litigation**

Touro is likely to succeed on its claims against Farkas because Farkas violated his duties to Touro, and misappropriated Touro's trade secrets and has or inevitably will use such information for the benefit of himself and to enable a competitor to create a dental program—to Touro's corresponding detriment. Consequently, a TRO should issue.

### 1.    *Defend Trade Secrets Act (Claim I)*

The Defend Trade Secrets Act (DTSA) protects against the actual or threatened misappropriation of trade secrets. 18 U.S.C. § 1836(b)(1), 3(A)(i). To prevail on claim for trade secret misappropriation under the Defend Trade Secrets Act (DTSA), plaintiff must prove that it possessed a trade secret and that defendant misappropriated the trade secret. 18 U.S.C.A. § 1836(b)(1). *Better Holdco, Inc. v. Beeline Loans, Inc.,* No. 20CIV8686JPCSN, 2023 WL 2711417 (S.D.N.Y. Mar. 30, 2023). Here, Plaintiff will certainly be able to show many of the almost 5,000 documents Farkas took on his way out, and the formula that the documents as a compilation contain, were confidential or trade secrets. Merely by looking at the titles of the documents themselves (listed above) it is clear that these documents contain trade secrets. Further, Farkas made his intentions clear when he informed Touro that he was leaving to become the Founding Dean of a competitor program. For the foregoing reasons, Touro is very likely to have a successful DTSA claim against Farkas.

### 2.    *Misappropriation of Trade Secrets (Claim II)*

To succeed on a claim for the misappropriation of trade secrets under New York law, a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means. *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43–44 (2d Cir. 1999).

"[A] trade secret is 'any formula, pattern, device or compilation of information which is used in one's business, and which gives [the owner] an opportunity to obtain an advantage over

competitors who do not know or use it.'" *Softel, Inc. v. Dragon Med. & Scientific Communications, Inc.*, 118 F.3d 955, 968 (2d Cir.1997) (quoting Restatement of Torts § 757 cmt. b (1939)), *cert. denied*, 523 U.S. 1020, 118 S.Ct. 1300, 140 L.Ed.2d 466 (1998); *accord Ashland Management Inc. v. Janien*, 82 N.Y.2d 395, 407, 624 N.E.2d 1007, 1012–13, 604 N.Y.S.2d 912, 917–18 (1993) (quoting the Restatement). In determining whether information constitutes a trade secret, New York courts have considered the following factors: (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

Here, Touro's trade secrets include, among others, compilations of information on how to replicate Touro's processes in opening institutions of higher education, decrease the time to obtain CODA accreditation, and how to operate a dental  school. This information was developed by Touro, and is not public information. Further, the information was known only by key employees such as Farkas. Moreover, the information was guarded by various layers of protection, including password-protected devices, two factor authentication, a digital workspace solution that delivers secure access to applications and University owned communications. The value of this information is paramount as it is the information that helped create TCDM just a few years ago, a process that Farkas himself was involved in. Lastly, this information cannot be easily acquired or duplicated, as it has been created via Touro processes and methods and took great time, expense and devotion to develop.

Due to the foregoing, Touro is likely to be successful on the merits of its Misappropriation of Trade Secrets claim.

### 3.   *Breach of Fiduciary Duties and Common Law Duty of Loyalty (Claim III)*

"New York law with respect to disloyal or faithless performance of employment duties is grounded in the law of agency, and has developed for well over a century." *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir.2003). An agent is obligated under New York law to be loyal to his employer and is "prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." *Id.* (quoting *Lamdin v. Broadway Surface Adver. Corp*., 272 N.Y. 133, 138, 5 N.E.2d 66 (1936)). This duty is not dependent upon an express contractual relationship, but exists even where the employment relationship is at-will. *Id.; accord Design Strategies, Inc. v. Davis*, 384 F.Supp.2d 649, 659–60 (S.D.N.Y.2005); *see also W. Elec. Co. v. Brenner*, 41 N.Y.2d 291, 295, 392 N.Y.S.2d 409, 360 N.E.2d 1091 (1977) ("The employer-employee relationship is one of contract, express or implied, and, in considering the obligations of one to the other, the relevant law is that of master-servant and principal-agent.") (citations omitted). "Under New York law, a person acting in a fiduciary capacity is forbidden from obtaining an improper advantage at the principal's expense." *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489 (S.D.N.Y. 2011).

"New York common law recognizes that an employee has an assumed duty when employed not to disclose trade secrets both during and after termination of employment. The US Court of Appeals for the Second Circuit found that, when not expressly included in the contract, common law duties are still implied, requiring the employee to maintain the secrecy of trade secrets and

confidential information during and after employment. *See North Atl. Instruments Inc. v. Haber*, 188 F.3d 38, 48 (2d Cir. 1999).

"When an employee uses an employer's proprietary or confidential information when establishing a competing business, the employee breaches his or her fiduciary duty to the employer." *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 521 (S.D.N.Y. 2011), *citing CBS Corp. v. Dumsday*, 268 A.D.2d 350, 353, 702 N.Y.S.2d 248 (1st Dep't 2000) (finding that plaintiffs sufficiently stated a cause of action for breach of fiduciary and common law duties owed to plaintiff-employer, where defendants, while in plaintiff's employ, "planned, and later formed, a competing corporation" that obtained a valuable "contract using confidential information").

Here, Farkas downloaded close to five thousand documents just a few days before he informed Dr. Kadish that he (Farkas) had signed an employment agreement with a competitor to be the founding dean of its dental program. Farkas's download of close to five thousand files, if divulged or used by him or his new employer, would provide the ability for a competitor or competitors to replicate Touro's processes, decrease their time to obtain CODA accreditation and speed their ability to open their new dental school—all while using Touro's confidential information against it to do so. (ECF 1, ¶ 75). Given the foregoing, Touro is likely to be successful on the merits of the duty of loyalty claim.

### 4.    *Tortious Interference with Existing and Prospective Business Relationships (Claim IV)*

As a result of his employment with Touro, Farkas was intimately familiar with, and had detailed knowledge concerning, the business relationships that existed between Touro and certain donors, third parties, and/or students. Farkas intentionally, with malice, and without privilege or justification, is interfering with Touro's business relationships with certain donors, third parties,

and/or students using unfair or improper means, and/or with the intent to interfere with such relationships. Touro possesses a protectable interest in its contracts and relations with its donors and students, in that it has a reasonable expectation of their continued association with Touro. Farkas's conduct was undertaken with malice, or in knowing disregard of or indifference to, the rights and interests of Touro. "To prevail on a claim for tortious interference with business relations, a party must prove: (1) that it had a business relationship with a third party; (2) that the defendant knew of that relationship and intentionally interfered with it; (3) that the defendant acted solely out of malice or used improper or illegal means that amounted to a crime or independent tort; and (4) that the defendant's interference caused injury to the relationship with the third party." *Stuart's, LLC v. Edelman*, 196 A.D.3d 711 (N.Y. App. Div. 2021).  As a direct and proximate result of Farkas's interference, Touro will suffer extensive irreparable injury, loss of goodwill, harm to its business, and other injury and damages for which there is no adequate remedy at law.

For the same reasons discussed above, Touro is likely to be successful on the merits of a Tortious Interference With Existing and Prospective Business Relationships claim.

### 5.     *Unfair Competition (Claim V)*

Employees have a duty not to engage in unfair competition. *Laro Maint. Corp. v. Culkin*, 700 N.Y.S.2d 490, 491-92 (2d Dep't 1999)). *See LaChapelle v. Fenty*, 812 F. Supp. "To establish unfair competition under New York common law, the plaintiff most prove (1) either actual confusion or a likelihood of confusion [as to the origin of the good]; and (2) bad faith on the part of the defendant." "Thus, the standard for federal mark infringement and unfair competition is virtually identical to that under New York common law," except the latter requires a showing of bad faith." 2d 434, 444 (S.D.N.Y. 2011). "To establish a cause of action for relief based on unfair competition, a plaintiff must demonstrate that the defendant wrongfully diverted the plaintiff's business to itself. In the absence of a restrictive covenant, an employee may freely compete with

a former employer unless trade secrets are involved or fraudulent methods are employed." *Stuart's, LLC v. Edelman*, 196 A.D.3d 711 (N.Y. App. Div. 2021).

Here, Plaintiff has admittedly taken documents from Touro and they cannot have been taken for any legitimate use. For him to benefit from taking the documents he has to use or disclose them to aid one or more competitors in the dental school space. Confidential materials were taken in bad faith, and with the intention to steal the information to form a competitor.

For these and the above reasons discussed above, Touro is likely to be successful on the merits of the Unfair Competition claim.

### 6.   *Violation of the Faithless Servant Doctrine (Claim VII)*

"The faithless servant doctrine holds that one who owes a duty of fidelity to a principal and who is faithless in the performance of his or her services is generally disentitled to recover his or her compensation, whether commissions or salary; it makes no difference that the services were beneficial to the principal, or that the principal suffered no provable damage as a result of the breach of fidelity by the agent." *Panos v. Mid Hudson Med. Grp., P.C.*, 204 A.D.3d 1016, 167 N.Y.S.3d 539 (2022). "An employee who acts in any manner inconsistent with his agency or trust and fails to exercise the utmost good faith and loyalty in the performance of his duties is deemed a faithless servant and must account to his principal for secret profits and forfeit his right to compensation." *Mosionzhnik v. Chowaiki*, 41 Misc. 3d 822, 972 N.Y.S.2d 841 (Sup. Ct. 2013). The taking of thousands of files while still an employee of Touro to aid one or more competitors inarguably is inconsistent with the good faith performance of his duties to Touro.

Based on the above, Touro is very likely to have a successful faithless servant claim against Farkas.

### D.   **A Balancing of the Equities Tips in Favor of Granting Preliminary Injunctive Relief**

Touro has shown a likelihood of success on the merits for each of its claims. But if the Court finds that Touro has only raised sufficiently serious questions going to the merits of each claim, the Court should respectfully still issue the requested temporary restraining order and preliminary injunction because a balance of the equities supports Touro.

Touro merely seeks to maintain the status quo and prevent Farkas from breaching his fiduciary duties, misappropriating Touro's trade secrets and confidential information, and engaging in unfair competition. Farkas's obligations to Touro are reasonable—returning back Touro's confidential documents and destroying those in Farkas's possession.

But if the Court denies Touro's request for immediate equitable relief, Farkas may continue to unfairly compete with Touro using Touro's confidential information and undermining the investment of substantial time, resources, and goodwill that Touro made in its student and donor relationships. Thus, the balance of the equities favors Touro.

Touro's request for a preliminary injunction seeks only the return to "the last, peaceable, noncontested" position Farkas held before he improperly took control of Touro's Confidential Information and Trade Secrets. Specifically, Touro requests a preliminary injunction against Farkas to allow Touro the opportunity to complete a forensic investigation, understand the scope of Farkas's misappropriation, and retrieve its Confidential Information and Trade Secrets, along with certifications that Farkas will not use this information in a similar role for a competitor. Granting the injunction to preserve the status quo would not result in greater harm to Farkas. *See Asa v. Pictometry Int'l Corp.,* 757 F. Supp. 2d 238 (W.D.N.Y. 2010) ("Because limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, court's task when granting a preliminary injunction is generally to restore, and preserve, the status quo ante, i.e., the situation that existed between the parties immediately

prior to the events that precipitated the dispute; status quo to be preserved by a preliminary injunction is the last actual, peaceable uncontested status which preceded the pending controversy.).

**E.      Touro Should Not Need To Post A Bond**

"The language of Rule 65(c) confers broad discretion on the trial judge to set the amount of the bond, even to dispense with the bond requirement altogether." *R.L.E. Corp. d/b/a Casa Imports v. Ferraro Foods, Inc.*, No. 6:15-cv-123 (GLS/TWD), 2015 WL 1456178, at *1 (N.D.N.Y. March 30, 2015) (bond requirement was unnecessary where individual defendant failed to establish that he was likely to suffer any harm without the posting). Here, Farkas cannot establish that he will be harmed if a bond is not posted. Touro's requested relief will not prevent Farkas from earning a livelihood.

## IV.      CONCLUSION

In sum, the equitable relief sought has been narrowly tailored to achieve Touro's legitimate and substantial interest in protecting itself from loss of proprietary information, trade secrets and confidential information – which if left unchecked, will cause Touro irreparable harm. Touro respectfully asks the Court to grant its motion for a temporary restraining order and preliminary injunction.


Dated: January 5, 2024                    Respectfully submitted,

                                          **COZEN O'CONNOR**

                                          */s/ Mariah Passarelli*
                                          Mariah Passarelli
                                          (Admitted *pro hac vice*)
                                          One Oxford Centre
                                          301 Grant Street, 41st Floor
                                          Pittsburgh, PA 15219
                                          Telephone: (412) 620-6500
                                          Email: mpassarelli@cozen.com

Janice Sued Agresti
3 World Trade Center
175 Greenwich Street, 55th Floor
New York, NY 10007
Telephone:  (212) 453-3978
Email: jagresti@cozen.com

*Attorneys for Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on today's date, a true and correct copy of the within **Memorandum of Law in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction** was served via United States mail and email as follows:

Gary Snitow
590 Madison Ave.
6th Floor
New York , NY   10022
Gary.Snitow@offitkurman.com

New York, NY
Dated: January 5, 2024                                    */s/ Janice Sued Agresti*